## THE CITY OF CHICAGO

*v.*

## CHARLES G. SINGER *et al.*

*Opinion filed February 18, 1903—Rehearing denied April 16, 1903.*

1. SPECIAL ASSESSMENTS—*city may appeal from judgment dismissing its petition.* Under section 123 of the act relating to county courts, as amended in 1881, a city may appeal from a judgment dismissing its petition for confirmation of a special assessment. (*City of Bloomington* v. *Reeves*, 177 Ill. 161, followed.)

2. SAME—*order dismissing petition is final as to right of city to appeal.* The provision of section 48 of the Local Improvement act, that the order entered on the hearing of objections *triable by the court* "shall not be deemed a final disposition of any such questions for the purpose of appeal unless objectors shall waive further controversy," etc., does not prevent the city from appealing from an order sustaining such objections and dismissing the petition.

3. SAME—*when objections are broad enough to include the one sustained by the court.* Objections urged by the appellee that the ordinance "does not specify the nature, character, locality and description of the proposed improvement," and that "said ordinance is void for uncertainty, insufficiency and informality," are broad enough to include the ground upon which the court based its judgment dismissing the petition, which was, that the ordinance was uncertain as to the description of the brick to be used.

4. SAME—*what does not render an ordinance invalid.* An ordinance which particularly and with certainty describes the brick to be used in the improvement is not rendered invalid by provisions requiring bidders to submit specimen bricks to be subjected to specified "absorption" and "abrasion" tests by the board of local improvements, and requiring the latter to reject all specimens not sustaining the tests.

5. SAME—*what not an unreasonable restraint upon competitive bidding.* A provision in an ordinance requiring bidders to submit specimen brick, which must withstand specified "absorption" and "abrasion" tests by the board of local improvements, is not an unreasonable restraint upon competitive bidding.

6. SAME—*when engineer's estimate includes cost of filling.* An estimate calling for a certain number of lineal feet of curb-stones at a specified price per foot, including "labor, material and all other expense attending the same," may be regarded as including the cost of the earth filling required by the ordinance to be put back of such curb-stones.

APPEAL from the County Court of Cook county; the Hon. W. T. HODSON, Judge, presiding.

EDGAR BRONSON TOLMAN, and ROBERT REDFIELD, (CHARLES M. WALKER, of counsel,) for appellant.

EDMUND H. SMALLEY, BRADLEY & WELDON, HUFF & COOK, and CHARLES H. JACKSON, for appellees.

Mr. JUSTICE BOGGS delivered the opinion of the court:

This was a petition to the county court of Cook county for a judgment confirming a special assessment levied under an ordinance of the city of Chicago, to defray the cost of curbing, grading, and paving with vitrified brick, a system of streets on the north-westerly side of the city of Chicago, known as the "Spaulding avenue system." The appellees severally filed numerous "legal objections" to the confirmation of the assessment. The court sustained the objection that the ordinance was indefinite and uncertain and dismissed the petition, and in the judgment set forth a certain provision of the ordinance that "all brick used must be equal, in every respect, to the specimen submitted by the bidders to the board of local improvements for test," wherein, as the judgment recited, the uncertainty and indefiniteness consisted. The city has brought the record here by appeal.

The appellee Singer entered his motion in this court to dismiss the appeal as to him for three reasons, viz.: First, that no final or appealable judgment or order was entered in the cause; second, that no appeal is allowed to the city, under the Local Improvement act, from an order sustaining "legal objections" to the petition; third, that the particular ground of objection that the ordinance was uncertain and indefinite, upon which the court acted and entered its judgment, as appears from the judgment, was not preferred as an objection by the said appellee Singer, and that the only error assigned in this court is

that the trial court erroneously sustained such particular objection. The first and second of these grounds urged for the dismissal of the appeal may be conveniently considered together.

Under section 48 of the Local Improvement act, being the act under which this proceeding was prosecuted, (4 Starr & Cur. Stat. p. 180,) the only objections to be considered and determined by the court are such as do not bear upon the questions whether the property of the objector will be benefited to the amount assessed against it, or that such property is assessed more than its proportionate share of the cost of the improvement. The section provides that objections such as are not to be considered by the court are to be set down for hearing at a future time to be fixed by the court, at which time such objections shall be tried by a jury, unless a jury shall be waived. All other objections are, however, according to the provisions of said section 48, to be determined by the court. If determined adversely to the objector by the court, by an express provision of the section the order or judgment is not a final or appealable order unless the objector shall waive the other objections which, as we have seen, are triable by a jury. If the objections triable by the court without a jury are overruled, the objector, if he is not willing to waive further controversy as to the objections which are triable by a jury, must proceed to the hearing of such other objections before a jury, and upon a final disposition of all the issues in the case may bring the entire proceeding into review by an appeal perfected in compliance with other provisions of the statute. The provision of said section 48 that the order entered by the court on the hearing of objections triable by the court "shall not be deemed a final disposition of any such questions for the purpose of appeal, unless objectors shall waive further controversy as to the remaining question upon the record," has no application to the right of the city to prosecute an

appeal from an order sustaining such objections and adjudging that the petition of the city for a judgment of confirmation be dismissed. The right of the city to prosecute an appeal from a judgment dismissing its petition is given by paragraph 213 of the act relating to courts, (Hurd's Stat. 1899, p. 546,) as we expressly decided in *City of Bloomington* v. *Reeves*, 177 Ill. 161.

Nor is the third ground of the motion to dismiss the appeal maintainable. We find the appellee Singer filed thirty objections to the petition, among them being the objections that "the ordinance authorizing said improvement does not specify the nature, character, locality and description of the proposed improvement," and "said ordinance is void for uncertainty, insufficiency and informality." These objections are broad enough to include the objection upon which the trial court acted and upon which error is assigned in this court, viz., that the ordinance is indefinite and uncertain as to the description of the brick to be used in the improvement. The city might have applied to the court for an order requiring the objection to be made more specific, but in the absence of such application the objection must be regarded as sufficiently definite. (*Davidson* v. *City of Chicago*, 178 Ill. 582; *Mead* v. *City of Chicago*, 186 id. 54.) The motion to dismiss must be and is overruled.

We think the court erred in sustaining the objection that the ordinance was indefinite and uncertain and for that reason void. We do not think the ordinance was indefinite or uncertain as to the character of the brick to be used in making the improvement. The ordinance, so far as necessary to be considered in order to determine as to the sufficiency of the objection, is as follows:

"The brick to be used shall be of the best quality of vitrified paving brick.

"The dimensions of the brick used shall be the same throughout the entire work in any particular case, and shall be not less than eight (8) inches in length, four (4)

inches in depth, and two and one-half ($2\frac{1}{2}$) inches in thickness, with rounded edges to a radius of one-quarter ($\frac{1}{4}$) of an inch.

"Said brick shall be of a kind known as re-pressed vitrified paving brick, and shall be re-pressed to the extent that the maximum amount of material is forced into them. They shall be free from lime and other impurities; shall be as nearly uniform, in every respect, as possible; shall be burned so as to secure the maximum hardness; so annealed as to reach the ultimate degree of toughness, and thoroughly vitrified, so as to make a homogeneous mass.

"The bricks shall be free from all laminations caused by the process of manufacture, and free from fire-cracks or checks of more than superficial character or extent.

"Any firm, person or corporation bidding for the work to be done shall furnish specimen brick, which shall be submitted to a 'water absorption' test, and if such brick show a water absorption exceeding three (3) per cent of their weight when dry, the bid of the person, firm or corporation so furnishing the same shall be rejected. Such 'water absorption' test shall be made by the board of local improvements of the city of Chicago in the following manner, to-wit: Not less than three (3) bricks shall be broken across, thoroughly dried and then immersed in water for seventy-two (72) hours. The absorption shall then be determined by the difference between the weight dry and the weight at the expiration of said seventy-two (72) hours.

"Twenty or more specimen brick shall also be furnished by each bidder for submission to the 'abrasion' test by the board of local improvements. Such test shall be made in the following manner, to-wit: Such specimen brick, or a sufficient number to fill fifteen per cent of the volume of the rattler, shall be submitted to a test for one hour in the machine known as the 'rattler,' which shall measure twenty (20) inches in length and twenty-eight

(28) inches in diameter, inside measurement, and shall be revolved at the rate of thirty (30) revolutions per minute. If the loss of weight by abrasion during such test shall exceed twenty per cent of the original weight of the brick tested, then such bid shall be rejected.

"All brick shall have a specific gravity of not less than two and one-tenth $(2\frac{1}{10})$, as determined by the formula, specific gravity equals $\frac{w}{w'-w''}$; where $w$ equals the weight of brick dry, $w'$ equals weight of brick after being immersed in water for seventy-two (72) hours, and $w''$ equals weight of brick in water.

"All brick used must be equal in every respect to the specimen submitted by the bidders to the board of local improvements for test."

It seems to be conceded by counsel for appellees that if the ordinance had contained nothing beyond the first four paragraphs as above set forth, it would have been free from the objection that it was uncertain or indefinite in respect of the description of the brick to be used. But it is urged, the provisions of the ordinance immediately following the said four paragraphs do not relate to the kind of brick to be used in paving the street, nor are the formulæ for testing the brick that are to be actually used in paving the street, but such provisions of the ordinance relate solely to the kind of brick that shall be submitted by the bidders as specimens at the time of making their bids. The argument of counsel for appellees further is, that the remaining portions of the ordinance as set out hereinbefore, require that two specimens of brick shall be submitted by each bidder, to-wit, "an indefinite number of brick for the water absorption test and twenty other brick for the abrasion test, and that the ordinance does not state which one of these specimens the brick shall equal. It requires it to be equal to the specimen submitted by the bidders." The conclusion of the argument of counsel for appellees is, that the ordinance leaves the kind of brick which shall be used in

the pavement of the street to the future determination of the board of local improvements, acting, not upon the provisions of the said four paragraphs of the ordinance as to the kind of brick to be used, but from the specimen brick which should be submitted to the board of local improvements under the latter provisions of the ordinance, and that therefore it is uncertain as to what the character of the brick to be used shall be.    In the same connection it is urged that the ordinance is faulty and void for the reason that it fails to provide that the specimen brick to be submitted by the bidders shall be preserved for the inspection of the property owners, and for reference should any question arise as to the work as the same is being performed by the contractors.

These criticisms of the ordinance are, in our view, exceedingly refined, in a degree hypercritical, and altogether unwarranted.    The four paragraphs referred to describe with great particularity and with unquestioned certainty the brick to be laid in the pavement.    The provisions which follow the four paragraphs mentioned were incorporated for the purpose of securing to the property owners and the public a pavement composed of brick of the quality and character described in the the said four paragraphs.    The board of local improvements were not clothed with power, by the subsequent provisions of the ordinance, to determine the kind of brick of which the pavement should be composed, but only to determine whether the brick which the bidders contemplated using were the kind and of the quality required by the four paragraphs of the ordinance to be laid in the pavement.

There is no force in the further suggestion that the provisions of the ordinance requiring the bidders to submit specimens of the brick intended to be used is an unreasonable restraint upon competitive bidding.    The provisions seem well adapted to the purpose of securing to the public and the property owners a pavement com-

202—6

posed of brick of the kind and quality required by the ordinance, and we are unable to see that such provision would deter from bidding any contractor who intended to provide and use brick of the quality and kind demanded by the ordinance.

Another objection preferred by a portion of the appellees is: "There is a variance between the ordinance and the engineer's estimate, in that the ordinance provides that earth filling, free from animal or vegetable matter, shall be placed at the back of sandstone curb-stones, as described in the ordinance, while the estimate of the engineer does not provide for the cost of such filling." The engineer's estimate does not itemize the cost of filling a space at the back of the curb-stones with earth filling. It appears from such estimate the improvement will require 27,808 lineal feet of curb-stones, the cost of which is estimated at sixty cents per lineal foot. The estimate submitted by the engineer includes, as is expressly stated in the estimate, "labor, material and all other expenses attending the same." It is therefore fairly to be considered that the estimate of sixty cents per lineal foot for the curb-stones included not only the stones themselves, but the "labor, material and all other expenses" attendant upon placing the stone in place and filling back as required by the ordinance. If the estimate included work or material not embraced in the ordinance the property owner might be assessed for work or material not authorized by the ordinance to be done, but if a portion of the improvement authorized by the ordinance to be done is omitted by the estimate and the estimated cost of the proposed improvement thereby reduced, we are unable to see that the property owner is in anywise injured. The objection sustained in *Chicago Terminal Transfer Railroad Co.* v. *City of Chicago,* 184 Ill. 154, was, that the estimated cost of the improvement included work not embraced in the ordinance, which would have resulted in a judgment of confirmation, and the creation

of a lien against the property of the objectors in an amount in excess of the probable cost of the improvement authorized to be made by the ordinance. The omission from the estimate has no such injurious effect.

The objections to the judgment of confirmation should not have been sustained, but should have been overruled. The judgment dismissing the petition must therefore be, and it is, reversed, and the cause will be remanded for further proceedings consistent with this opinion.

*Reversed and remanded.*